## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT VENTULLO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NEWELL BRANDS, INC. and SUNBEAM PRODUCTS, INC., collectively d/b/a Crock-Pot,<br><br>        Defendants. | **CASE NO. 1:26-cv-10027**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Ventullo ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendants Newell Brands, Inc. and Sunbeam Products, Inc., collectively d/b/a/ Crock-Pot (collectively "Defendants" or "Crock-Pot") and alleges the following based on personal knowledge as to himself, and as to all other matters, upon information and belief, including investigation conducted by his attorneys:

### INTRODUCTION

1.    This action concerns Crock-Pot®'s "Easy-to-Clean" line of slow cookers (the "Slow Cookers" or "Class Products")[1] designed, manufactured, marketed, and sold by Crock-Pot and its retailers to consumers across the United States. The Slow Cookers contain identical or substantially similar designs, manufacturing, and coating that underlie this Action.

---

[1] The Class Products include, (1) the Crock-Pot® 7-Quart Easy-to-Clean Cook & Carry® Slow Cooker, Black Stainless Steel, and (2) the Crock-Pot® One Touch Control 6-Quart Easy-to-Clean Slow Cooker, Stainless Steel.

2.    The Slow Cookers are part of Crock-Pot's line of "Easy-to-Clean" slow cookers, as both contain "Easy-to-Clean" as part of the product names and are distinguished from other offerings from Crock-Pot on the basis that the Slow Cookers are designed, manufactured, marketed, and sold expressly as "Easy-to-Clean" due to the Teflon and other materials used in and for the cooking surface.[2]

3.    The Slow Cookers contain a uniform defect that causes the nonstick coating to detach, bubble, flake, chip, and peel off, ultimately resulting in premature failure, migration of nonstick coating into food being cooked, an inability to clean the Class Products ("easily" or at all), or cook effectively, any one of which renders the slow cookers unfit for use for the expected service life of the slow cookers.

4.    More specifically, Plaintiff's expert's microscopy testing has revealed during an investigative analysis, that there is an excess amount of mica in the Teflon, which creates separation between the Teflon and the ceramic materials ("the Defect"). In other words, the excess mica prevents the Teflon from properly adhering to the ceramic materials and leads to the conditions described in the previous paragraph.

5.    Notwithstanding this uniform Defect, Crock-Pot represents that the Slow Cookers are "free from defects in material and workmanship,"[3] "Easy-to-Clean,"[4] and impliedly fit for the

---

[2] *See* https://www.crock-pot.com/slow-cookers/?prefn1=size&prefv1=6%20Quart&start=0&sz=24&initialCGID=crockpot-slow-cookers&view=product (last visited Oct. 27, 2025); https://www.crock-pot.com/slow-cookers/crock-pot-7-quart-easy-to-clean-cook-carry-slow-cooker-black-stainless-steel/SAP_2125325.html (last visited Oct. 27, 2025).

[3] *See* https://newellbrands.imgix.net/35aa6e3b-2607-34f4-a6fc-c1cb31f4ac9b/35aa6e3b-2607-34f4-a6fc-c1cb31f4ac9b.pdf (6-Quart) (last visited Oct. 27, 2025); https://newellbrands.imgix.net/35aa6e3b-2607-34f4-a6fc-c1cb31f4ac9b/35aa6e3b-2607-34f4-a6fc-c1cb31f4ac9b.pdf (7-Quart) (last visited Oct. 27, 2025).

[4] *See* paragraph 2 n.2 above.

ordinary purpose for which they are sold, including that the Slow Cookers and able to properly and reliably prepare food and are subsequently "easy" to clean.

6.      Given the nature of the conditions caused by the Defect, the Class Products cannot be repaired but only replaced.

7.      Despite Crock-Pot's representations, the Slow Cookers suffer from the uniform Defect which renders them contrary to Crock-Pot's representations and unsuitable for their intended use. At no time did Crock-Pot disclose the Defect to Plaintiff or putative Class Members.

8.      Crock-Pot's conduct with respect to the Slow Cookers is false, misleading, contrary to reasonable consumer expectations, and as a result, Plaintiff and Class Members suffered economic damages at the point of purchase.

9.      Upon information and belief, Crock-Pot has begun withdrawing the Class Products from the market due, at least in part, to the Defect.

## THE PARTIES

10.     Plaintiff Robert Ventullo is, and at all relevant times was, a resident and citizen of Everett, Massachusetts. Mr. Ventullo purchased his Class Product in Massachusetts.

11.     Defendant Newell Brands, Inc. is a Delaware corporation with its principal place of business located in Atlanta, Georgia.

12.     Defendant Sunbeam Products, Inc. is a Delaware corporation with its principal place of business located in Boca Raton, Florida.

13.     At all times relevant herein, Defendants are the agents and/or alter egos of each other in the material selections, material mixtures, design, manufacture, marketing, and sale of the Slow Cookers.

14.     At all times relevant herein, Defendants were engaged in actual and/or de facto joint ventures in the material selections, material mixtures, design, manufacture, marketing, and sale of the Slow Cookers.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is minimal diversity because Plaintiff and each Defendant are citizens of different states.

16.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this State and within this District, receive substantial compensation and profits from the marketing, distribution, and sale of products in this District, and engaged in the unlawful practices described in this Class Action Complaint within this District.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

18.     More than four decades ago, Crock-Pot designed and sold the original slow cooker as a meal preparation tool "for housemakers to serve an affordable, tender, delicious meal to their families."[5] The slow cooker is a countertop electrical cooking appliance used to simmer at a lower temperature than other cooking methods, such as baking, boiling, and frying, to facilitate unattended cooking for many hours.

---

[5] *See* https://www.crock-pot.com/about-us.html (last visited Oct. 27, 2025).

19.    Today, Crock-Pot dominates the slow cooker market, with its brand name being virtually synonymous and used interchangeably with slow cookers.[6]

20.    The design of the slow cookers has changed over time, as the Crock-Pot "brand continues to advance with new innovations that meet the demands of today's modern lifestyles and help fulfill self-expression of creative cooks home."[7] Crock-Pot's goal is to "continue to develop products that address the needs of households today."[8] Crock-Pot emphasizes that innovations are intended to "make entertaining easier and more convenient."[9]

21.    Further, the "global nonstick cookware market had experienced steady growth and was poised to continue to upward trajectory in the coming years" being driven in no small part by consumers' desire for cooking with easy and convenient clean-up.[10] The market for nonstick cookware is projected to be valued at over ten billion dollars in 2025.[11]

22.    The Class Products, which include the Crock-Pot® 7-Quart Easy-to-Clean Cook & Carry® Slow Cooker, Black Stainless Steel and the Crock-Pot® One Touch Control 6-Quart Easy-to-Clean Slow Cooker, Stainless Steel, all contain the same or substantially similar materials, designs and manufacturing as is relevant to this litigation. Specifically, they all contain the same materials used for the nonstick cooking surface, the same formula, and same designed adherence of the materials to each other and the rest of the product.

---

[6] *See* https://www.americastestkitchen.com/articles/5643-slow-cooker-crockpot-whats-the-difference (last visited Oct. 27, 2025).
[7] *See id.*
[8] *See id.*
[9] *See id.*
[10] *See* https://www.skyquestt.com/report/nonstick-cookware-market (last visited Oct. 27, 2025).
[11] *See id.*

23.    An image of the Crock-Pot® One Touch Control 6-Quart Easy-to-Clean Slow Cooker, Stainless Steel is below[12]:



An image of the Crock-Pot® 7-Quart Easy-to-Clean Cook & Carry® Slow Cooker, Black Stainless Steel follows[13]:



24.    As stated above, Crock-Pot uniformly represents that the Slow Cookers are made with "[e]asy-to-clean nonstick ceramic coating" which "easily wipes clean, requiring less effort to clean by hand compared with traditional stoneware."[14]

---

[12] *See* https://www.crock-pot.com/slow-cookers/crock-pot-one-touch-control-6-quart-easy-to-clean-slow-cooker-stainless-steel/SAP_2125324.html (last visited Oct. 27, 2025).

[13] *See* https://www.crock-pot.com/slow-cookers/crock-pot-7-quart-easy-to-clean-cook-carry-slow-cooker-black-stainless-steel/SAP_2125325.html (last visited Oct. 27, 2025).

[14] *See* paragraph 2 n.2 above.

25.     Crock-Pot represents that "Cleanup is easy, too. Its nonstick ceramic coating easily wipes clean, requiring less effort to clean by hand compared with traditional stoneware."[15]

26.     Moreover, the Slow Cookers uniformly contain a product image with a blurb indicating that the Slow Cookers are "Easy to Clean! Nonstick coating cleans with just a wipe"[16]:

 

27.     The Slow Cookers are also uniformly represented to be "Dishwasher-Safe: Stoneware and glass lid are both dishwasher-safe for additional ease with cleaning."[17]

28.     Crock-Pot's marketing materials contain an additional representation that the Slow Cookers have an "Easy to Clean Non-Stick PFOA-Free Coating."[18] Perfluorooctanoic Acid, or "PFOA" is a type of per- and polyfluoroalkyl substance ("PFAS"), a group of manufactured chemicals which may be harmful to human health.[19]

---

[15] *See id.*
[16] *See id.*
[17] *See id.*
[18] *See* paragraph 5 n.3 above.
[19] https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Nov. 5, 2025).

29.    However, this non-stick coating is actually Teflon (also known as, polytetrafluoroethylene (PTFE)), which is a plastic coating in the PFAS family.[20]

30.    Collectively, Crock-Pot's naming of the "Easy-to-Clean" line of cookware as well as the accompanying representations related to the "easy to clean" quality of the Slow Cookers ("Easy-to-Clean" Representations), which Crock-Pot used to induce consumers into purchasing and consumers relied upon when purchasing the Slow Cookers.

31.    Crock-Pot's marketing materials represents to consumers that the Slow Cookers are "free from defects in material and workmanship."[21]

32.    The Slow Cookers are sold with express and implied warranties that the Slow Cookers are merchantable, fit for the ordinary purpose for which they are sold, including that the Slow Cookers and able to properly and reliably prepare food and to subsequently are easy to clean, and are otherwise free from defects.

33.    Despite Crock-Pot's representations, the Defect renders the Slow Cookers unfit for their ordinary and intended purpose and pose a safety hazard to consumers from possible Teflon ingestion. The Defect also causes the Slow Cookers to prematurely fail or otherwise render the Slow Cookers unfit for use for the expected service life of the Slow Cookers.

34.    Had Plaintiff, Class Members, and the consuming public known that the Slow Cookers were defective, were not easy to clean, would lead to the migration of chemical coating into their food, would prematurely fail or otherwise would not be fit for use for the expected service

_____

[20] While this case does not relate to the "PFOA-Free" representations, it is worth noting that the Teflon coating is a member of the PFAS family given that this coating is what flakes or breaks free and migrates into food being cooked. *See* https://www.ecocenter.org/our-work/healthy-stuff-lab/reports/whats-cooking/undisclosed-pfas-coatings-common (Last Accessed December 30, 2025).
[21] *See* paragraph 21 n.17 above.

life of the Slow Cookers, they would not have purchased the Slow Cookers at all, or would not have purchased the Slow Cookers on the same terms or for the same price.

35.    Without truthful representations regarding the Defect, Plaintiff, Class Members, and the consuming public would not be aware of a uniform Defect in the Slow Cookers and may continue to purchase the Slow Cookers.

36.    Accordingly, owners of the Slow Cookers were deprived of material information at the time of purchase and did not receive the benefit of the bargain for what they paid for or received and have been damaged as more fully described herein.

## MATERIALS, DESIGN, AND MANUFACTURE OF THE SLOW COOKERS

37.    The Slow Cookers are uniformly designed, manufactured, marketed, and sold with a nonstick ceramic coating applied to the Slow Cooker's stoneware. The following diagram illustrates the various components of the Slow Cooker[22]:

---

[22] *See id.*



38.     As indicated above, the nonstick coating applied to the Slow Cooker's stoneware suffers from a defect in material selection, material mixture, design, and/or manufacturing such that the coating detaches, bubbles, chips, flakes, and peels off the ceramic stoneware during normal and foreseeable use.

39.     As stated above, Plaintiff's pre-suit investigation, which included microscopy testing, reveals that in addition to Teflon, the ceramic coating also contains minerals referred to as "mica." The excessive amount of mica contained within the coating creates separation between the Teflon and the stoneware which prevents the Teflon from properly adhering to the stoneware.

40.    The following microscopic images from Plaintiff's investigation show the lack of proper adhesion between the Teflon and the stoneware:





41.    The separation shown in the images above, or lack of proper adhesion of the Teflon to the stoneware due to the excessive amount of mica in the nonstick coating, causes the coating to form pits and bubbles, and to flake during ordinary and expected use of the Slow Cookers.

Flaking of the nonstick coating eliminates the "Easy-to-Clean" properties of the Slow Cookers and results in the complete and premature failure of the Slow Cookers.

42.     Additionally, flaking risks consumption of the Slow Cooker's nonstick coating, which is not safe for consumers. Flaking can result in Teflon migrating into consumers' food, which subsequently results in the ingestion of potentially toxic chemicals such as PTFE[23] contained in the Teflon coating.

43.     Regardless of toxicity, consumers do not expect to ingest the coating of the Slow Cookers with ordinary and expected use of the Slow Cookers and would not expect that doing so would be safe.

44.     The Defect, and the risk of ingestion of Teflon, renders the representation that the Slow Cookers have a "PFOA-Free Coating" misleading even if technically true. Crock-Pot knows or should know that consumers are increasingly concerned about ingesting toxic chemicals, including "forever chemicals" such as PFAS. Crock-Pot knows or should know that by representing that the Slow Cookers have a "PFOA-Free Coating," consumers will be led to believe that the coating does not contain *any* PFAS or other chemicals which could be harmful to human health if ingested.

45.     While true that the Slow Cookers may not have PFOA specifically in their coatings, consumers will misunderstand the representation that the Slow Cookers are free of PFOA to mean that they are free from all PFAS which is not true given that Teflon contains PTFE, a different

---

[23] *See* https://www.gear-hugger.com/blog/our-blog-1/reasons-teflon-is-harmful-and-why-its-in-thousands-of-consumer-products-36?srsltid=AfmBOoquUzQ_LRubxM7mENMp6b0pOhYU-cdtkZxPGVlffq4ku1zeX-LR (last visited Oct. 28, 2025); https://chemsec.org/the-teflon-chemical-ptfe-is-often-touted-as-a-safe-cousin-of-toxic-pfas-but-is-it-really/ (last visited Oct. 28, 2025).

chemical which is categorically considered PFAS and may pose risks to human health if ingested due to the Defect.[24]

46.    Nowhere does Crock-Pot disclose the Defect to Plaintiff, Class Members, or the consuming public, whether at the time of purchase or thereafter, nor has Crock-Pot recalled the Slow Cookers. Crock-Pot does not warn about the possibility of flaking or possible risks associated with ingesting the nonstick coating. Notwithstanding, Crock-Pot no longer makes the Slow Cookers available for purchase on its website.[25]

47.    Crock-Pot has specifically been asked by consumers about the Defect, and Crock-Pot fails to acknowledge the Defect or otherwise advise consumers about the Defect or the safety risks from Teflon ingestion.

48.    For example, the following question-and-answer conversation was posted on Crock-Pot's website. One year ago, a consumer was asking about the Slow Cookers experiencing peeling and Crock-Pot omitted any acknowledgement of the Defect[26]:

---

[24] *See* https://www.consumerreports.org/toxic-chemicals-substances/you-cant-always-trust-claims-on-non-toxic-cookware-a4849321487/ (last visited Oct. 28, 2025).

[25] Upon information and belief, the Slow Cookers are still available to consumers for purchase at authorized retailers although sale of the Slow Cooker is being phased out. *See, e.g.,* https://www.target.com/p/crock-pot-7qt-cook-38-carry-programmable-easy-clean-slow-cooker-stainless-steel/-/-A-91476612#lnk=sametab (last accessed Oct. 30, 2025).

[26] *See* https://www.crock-pot.com/slow-cookers/crock-pot-7-quart-easy-to-clean-cook-carry-slow-cooker-black-stainless-steel/SAP_2125325.html (last visited Oct. 28, 2025).



49.     Two years ago, a different consumer indicated to Crock-Pot that he or she only used the Slow Cooker three times before the coating bubbled and peeled. When asked directly about the reason for bubbling and peeling, Crock-Pot refused to acknowledge the Defect[27]:



50.     The answers above appear as they are on Crock-Pot's website at the time of the filing of this Class Action Complaint. Crock-Pot did not modify its answers to these questions to

---

[27] *See id.*

include information related to the Defect after Crock-Pot stopped selling the Slow Cookers on its website.

51.     Upon information and belief, Crock-Pot removed the Crock-Pot® 7-Quart Easy-to-Clean Cook & Carry® Slow Cooker, Black Stainless Steel from its website on or around November 1, 2025, and only after receiving written notice from Plaintiff of his and Class Members' claims against Crock-Pot should it fail to cure the claims and violations of the law. However, Crock-Pot refused to take remedial action.

52.     The Defect is latent such that no reasonable consumer would know, or be able to discover through inspection, at the time of purchase that the nonstick coating is not properly adhered to the stoneware and will flake with ordinary and expected use of the Slow Cookers.

53.     However, Crock-Pot knew or should have known of the Defect before it distributed the Slow Cookers into the consumer marketplace based upon product design manufacturing and quality assurance testing.

54.     Crock-Pot had a duty to disclose the Defect and take action to remedy the Defect upon discovery of same.

55.     Crock-Pot also has an array of offerings with different lines of slow cookers which do not contain the Defect.

56.     Plaintiff and Class Members have a reasonable expectation that the "Easy-to-Clean" Slow Cookers they purchased will be easy to clean, will be free from defects, will not have a nonstick coating that flakes off during normal use, and will otherwise be merchantable and fit for their ordinary and intended purpose for their expected service life. Due to the Defect, the Slow Cookers will fail prematurely, and Plaintiff and Class Members will suffer a total loss of use of the Slow Cookers.

57.     The Defect is material to Plaintiff and Class Members. Had Plaintiff and Class Members known the truth about the Slow Cookers, they would not have purchased the Slow Cookers or would have paid less for them. Thus, Plaintiff and Class Members did not receive the benefit of their bargain.

## SLOW COOKER WARRANTIES

58.     Crock-Pot expressly and impliedly warrants, via its Product Manuals, advertisements, pamphlets, brochures, circulars, samples, product packaging, through employees, and through authorized retailers that the Slow Cookers are fit for the ordinary purpose for which they are sold.

59.     Crock-Pot expressly warrants that the Slow Cookers are "Easy-to-Clean"[28] and will be "free from defects in material and workmanship" for "one year from the date of purchase."[29]

60.     Specifically, Crock-Pot warrants (the "Warranty"[30]):

> . . . that for a period of one year from the date of purchase, this product will be free from defects in material and workmanship. Sunbeam, at its option, will repair or replace this product or any component of the product found to be defective during the warranty period. Replacement will be made with a new or remanufactured product or component. If the product is no longer available, replacement may be made with a similar product of equal or greater value. This is your exclusive warranty. Do NOT attempt to repair or adjust any electrical or mechanical functions on this product. Doing so will void this warranty.
>
> This warranty is valid for the original retail purchaser from the date of initial retail purchase and is not transferable. Keep the original sales receipt. Proof of purchase is required to obtain warranty performance. Sunbeam dealers, service centers, or retail stores selling Sunbeam products do not have the right to alter, modify or any way change the terms and conditions of this warranty.

---

[28] *See* paragraph 16 n.11 above.
[29] *See* paragraph 22 n.17 above.
[30] *See id.*

This warranty does not cover normal wear of parts or damage resulting from any of the following: negligent use or misuse of the product, use or improper voltage or current, use contrary to the operating instructions, disassembly, repair, or alteration by anyone other than Sunbeam or an unauthorized Sunbeam service center.

. . . .

Sunbeam shall not be liable for any incidental or consequential damages caused by the breach of any express, implied or statutory warranty or condition.

Except to the extent prohibited by applicable law, any implied warranty or condition of merchantability or fitness for a particular purpose is limited in duration to the duration of the above warranty.

Sunbeam disclaims all other warranties, conditions or representations, express, implied, statutory or otherwise.

Sunbeam shall not be liable for any damages of any kind resulting from the purchase, use or misuse of, or inability to use the product including incidental, special, consequential or similar damages or loss of profits, or for any breach of contract, fundamental or otherwise, or for any claim brought against purchaser by any other party.

61.    The Defect renders the Products unsuitable for their intended purpose of cooking food and being Easy-to-Clean, as the failure of the nonstick coating can contaminate food; makes the products difficult or impossible to clean properly; and ultimately unfit for use for any purpose.

62.    The Defect leaves Crock-Pot in breach of the Warranty as the Slow Cookers are not "free of defects in material and workmanship" at the time Plaintiff and Class Members purchased the Slow Cookers because the Defect is such that the coating consists of an improper material selection and/or improper mixture of materials due to the excess in the amount of mica in the Teflon which prevents proper adhesion of the coating to the stoneware.

63.    Plaintiff and Class Members are in privity with Crock-Pot because there are sufficient direct dealings between them, are the intended users and beneficiaries of the Class Products, and are the intended marketing, sales, and advertising targets.

64.     Plaintiff and Class Members purchased the Slow Cookers which were designed, manufactured, marketed, and sold by Crock-Pot, and Plaintiff and Class Members relied upon Crock-Pot's specifications, representations, and express and implied warranties when purchasing the Slow Cookers as intended by Crock-Pot such that Plaintiff and Class Members are the intended beneficiaries of Crock-Pot's express and implied warranties.

65.     Plaintiff and Class Members are the intended beneficiaries of the Slow Cookers and the warranties (express and implied) as demonstrated by the express terms of the Warranty. For example, in a section of the Warranty titled "SERVICE INSTRUCTIONS" Crock-Pot instructs consumers to that, "[i]f you need to exchange the unit, please return it in its original carton, with a sales receipt, to the store where you purchased it." This instruction is directly to consumers and indicates how Crock-Pot intends for consumers to comply and effectuate a product exchange under the Warranty.

66.     Moreover, the Warranty expressly specifies that "This warranty is valid for the original retail purchaser," manifesting Crock-Pot's intent that the Warranty applies to Plaintiff and Class Members. Crock-Pot's authorized retailers were not intended to be the ultimate consumers of the Slow Cookers and have no rights under the Warranty. Crock-Pot's Warranty was designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the Slow Cookers.

67.     Crock-Pot's authorized retailers have no rights under the Warranty and are expressly excluded from claiming rights under the Warranty as pertains to the Slow Cookers to the extent that "Sunbeam dealers, service centers, or retail stores selling Sunbeam products to not have the right to alter, modify or any way change he terms and conditions of this warranty."

68.    It was reasonably foreseeable for Plaintiff and Class Members to both rely upon Crock-Pot's warranties, whether express or implied, and be the intended beneficiaries of the Slow Cookers and Crock-Pot's warranties.

69.    The Warranty fails its essential purpose and is both procedurally and substantively unconscionable because:

    a.  Every Slow Cooker contains the same nonstick coating, therefore the Defect exists at the time the Slow Cookers leave the manufacturing facility;

    b.  Crock-Pot fails to disclose the Defect to consumers at the time of purchase or thereafter;

    c.  Crock-Pot has not issued a recall or otherwise warned Plaintiff and Class Members of the Defect despite having knowledge of the Defect and discontinuing the sale of the Slow Cookers on its website;

    d.  Under the Warranty, Crock-Pot limits possible remedies to a repair or replacement of the Slow Cookers. Upon information and belief, when Crock-Pot replaces the Slow Cookers, it performs a one-for-one replacement such that the replacement slow cooker also contains the Defect. Additionally, there are no repairs made available by Crock-Pot for the Defect;

    e.  Crock-Pot excludes damages of any kind resulting from the purchase of the Slow Cookers and loss of use of the Slow Cookers including incidental, special, consequential or similar damages or loss of profits despite knowing that the Defect would almost certainly cause such damages;

    f.  Crock-Pot knew or should have known of the Defect in the Slow Cookers prior to and at the time of sale to consumers;

    g.  Crock-Pot was in a superior position to know of, remedy, and disclose the Defect in the Slow Cookers to Plaintiff and Class Members, who could not have known of the Defect at the time of purchase;

    h.  Plaintiff and Class Members had no bargaining power as they were unable to negotiate the terms of the Warranty, including the scope of coverage, durational time limitation, or disclaimers contained therein. This is further evidenced by the fact the authorized retailers of the Slow Cookers had no right to alter, modify or in any way change the terms and conditions of the Warranty;

i.   Plaintiff and Class Members had no meaningful choice in the terms of the Warranty, including the scope of coverage, durational time limitation, or disclaimers contained therein;

j.   Plaintiff and Class Members had no meaningful choice in choosing another brand of slow cooker, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations and did not have sufficient information to make an informed decision about the adequacy or appropriateness of the Warranty in light of the Defect vis-à-vis other slow cooker brands' warranties;

k.   There was a substantial disparity between the Parties' bargaining power such that Plaintiff and Class Members were unable to derive a substantial benefit from the Warranty. A disparity existed because Crock-Pot was aware that the Slow Cookers were inherently defective, Plaintiff and Class Members had no notice or ability to detect the Defect, and Crock-Pot knew Plaintiff and Class Members had no notice or ability to detect the Defect even if they could have inspected the Slow Cookers prior to purchase due to the latency of the Defect;

l.   The durational limits on the Warranty are grossly inadequate to protect Plaintiff and Class Members from the Defect, which Crock-Pot knew or should have known;

m.  Plaintiff and Class Members would have negotiated better terms in the purchase of their Slow Cookers and Warranties had they been aware of the Defect, and been able to negotiate such terms;

n.   The terms of the Warranty unreasonably favor Crock-Pot over Plaintiff and Class Members;

o.   Crock-Pot failed to warn consumers in its Warranty that if the nonstick coating of the Slow Cookers flakes that they should stop using the Slow Cookers;

p.   Crock-Pot requires that in order for a consumer to make a valid claim under the Warranty that the consumer present receipt as proof of purchase which is an unreasonable barrier to submitting a valid claim and otherwise is intended to suppress valid claims;

q.   Crock-Pot limits valid implied warranty claims to the duration of the Warranty despite its knowledge that the Defect is latent and may not manifest until after the one-year duration prescribed in the Warranty; and

r.   Crock-Pot disclaims all other warranties, conditions, and representations beyond the Warranty notwithstanding Crock-Pot intends for its representations and implied warranties to be relied upon by Plaintiff, Class Members, and the consuming public and otherwise knows or should know that its representations

and omissions are material to Plaintiff, Class Members, and the consuming public.

s. The Warranty contains a disclaimer of all other express or implied warranties which is specifically procedurally and substantively unconscionable. Plaintiff and Class Members were not aware of the specific disclaimer and did not expressly agree to it. Further, the disclaimer is inconspicuous as it is in the same font as all other language in the Warranty, contains no bolding or capital letters, and in no sense directs Plaintiff or Class Members to review the language with a heading or other demarcations and instead is simply buried in the middle of a wall of text. Upon information and belief, the disclaimer is intentionally inconspicuous in order to limit Plaintiff and Class Members legal rights without affording adequate notice or opportunity to challenge the unfair provision where Plaintiff and Class Members give up common law and statutory rights without consideration. Moreover, Plaintiff and Class Members would not have the ability to negotiate the terms even if they were aware of the disclaimer.

70.     The Warranty excludes coverage for normal wear of parts but does not define what Plaintiff or Class Members should understand normal wear of parts to mean. Absent additional clarification of what normal wear of parts means, Plaintiff and Class Members are led to believe that because the Slow Cookers are free from defects in material and workmanship that flaking of the nonstick coating is the result of normal wear of parts and is not covered under the Warranty and are otherwise deterred from making valid claims under the Warranty.

71.     The failure to disclose the Defect or otherwise warn Plaintiff and Class Members that flaking of the nonstick coating is not normal wear of parts is unfair and deceptive.

72.     As a direct, proximate, and foreseeable result of the Defect, Plaintiff and Class Members suffered damages, including but not limited to: (a) the difference in value of the Slow Cookers as purchased and the Slow Cookers received; (b) loss of use of the Slow Cookers; and (c) consequential damages.

73.     Had Plaintiff and Class Members known about the Defect at the time of purchase, Plaintiff and Class Members would not have agreed to the Warranty terms or limitations associated with the Warranty.

## PLAINTIFF'S FACTUAL ALLEGATIONS

74.     Mr. Ventullo purchased a Slow Cooker on or around January 16, 2023 for $74.99 from Target.  At all times, Mr. Ventullo used his Slow Cooker for normal, household (non-commercial) use and for normal, foreseeable household purposes.

75.     Mr. Ventullo purchased the Slow Cooker because he believed the representations of the performance, quality and use of the Slow Cookers were true. There were no disclosures or warnings related to the Defect which would have caused him to question his purchase. He believed, based on the Slow Cooker's representations and omissions, that the Slow Cooker was appropriate for its ordinary and intended purpose.

76.     After using the Slow Cooker as instructed and intended, the nonstick coating on the stoneware of his Slow Cooker peeled off and mixed in his food. After noticing this, Mr. Ventullo realized he would be unable to clean the Slow Cooker or continue to use it without the risk of ingesting Teflon after it flaked and migrated into his food, and he discontinued his use of the Slow Cooker.

77.     Mr. Ventullo expected the Slow Cooker would last more than one year and that the Slow Cooker would not be defective, prematurely fail, unfit for use, and have a coating that flaked in that time.

78.     Upon information and belief, had Mr. Ventullo made a claim under the Warranty, he would have received the same or a substantially similar Slow Cooker that would have failed in the same way as his Slow Cooker. However, Mr. Ventullo did not make a warranty claim because he believed his claim would not be covered.

79.     Given that Crock-Pot unlawfully concealed the Defect from Mr. Ventullo at the time he purchased his Slow Cooker, he did not suspect (and had no reason to suspect) that there was anything wrong with his Slow Cooker.

80.     Mr. Ventullo's Slow Cooker has not performed as expected for its service life. Had he known of the Defect, he would not have purchased the Slow Cooker and instead would have selected another slow cooker model, and/or would have paid less than he did for it. Therefore, he did not receive the benefit of his bargain.

81.     On July 21, 2025, Mr. Ventullo provided Crock-Pot written notice of the Defect as well as his prospective claims and the claims of putative Class Members and Crock-Pot's violations of the law, in particular and as prescribed by the Massachusetts Regulation of Business Practice and Consumer Protection Act.

82.     Crock-Pot has denied that there is any Defect and failed to provide Mr. Ventullo or the putative Class Members with an adequate remedy.

## CROCK-POT'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

83.     Crock-Pot knew or should have known when it sold the Slow Cookers to the public that the Slow Cookers suffered from the Defect, and that the Defect caused the Slow Cookers to prematurely fail and would be unfit for use as a result.

84.     Based on Crock-Pot's engineering knowledge, which it has accumulated in part from designing, manufacturing, marketing, and selling slow cookers for over forty years, it has known or should have known based on design decisions, quality assurance testing, warranty claims, and consumer complaints that the nonstick coating did not properly adhere to the stoneware and would detach, bubble, chip, flake, peel off, and prematurely fail to perform as expected and represented and thusly lose its useful value.

85.    Accordingly, Crock-Pot was in a superior position to Plaintiff and Class Members as to knowledge of the design, material selection, material mixture, manufacturing, marketing, advertising, and sale of the Class Products with the Defect.

86.    Crock-Pot sells multiple lines and styles of slow cookers in addition to manufacturing and selling the Slow Cookers subject to this action, yet not all of Crock-Pot's slow cooker offerings contain "Easy-to-Clean" and nonstick representations. Crock-Pot intentionally designs and represents the Slow Cookers as "Easy-to-Clean" because Crock-Pot has awareness of the particular properties of the nonstick coating formula.

87.    Crock-Pot received numerous complaints directly through its website, which at all relevant times Crock-Pot controlled. These complaints either provided direct notice of the Defect to Crock-Pot or provided a basis for Crock-Pot to investigate and discover the Defect if Crock-Pot was not aware at the time of receiving the complaints.

88.    For example, approximately one year ago a consumer named SQ77 rated the Slow Cooker one star, indicated that he or she does not recommend it, published a post titled "The nonstick crock is awful!" and stated the following[31]:

> The non stick coating came off very quickly. We were afraid to eat the food with nonstick coating floating in it.

In response, Crock-Pot stated:

> Hello
>
> Thank you for taking time to post this review.
>
> We are sorry to hear that the coating in your insert is peeling off. This is not the experience we want you to have with one of our products. We understand your disappointment and we apologize for any inconvenience that this may have caused you. We would like to encourage you to contact

---

[31] *See* https://www.crock-pot.com/slow-cookers/crock-pot-one-touch-control-6-quart-easy-to-clean-slow-cooker-stainless-steel/SAP_2125324.html (last visited Oct. 29, 2025).

us directly so we can assist you further and find the best solution for this issue. You can reach us via https://www.crock-pot.com/support/contact-us or through LiveChat. We're available Mon.-Fri. 9 am -5 pm Eastern Time.

Thank you and please stay safe!

Crockpot Consumer Care

89.     Similarly, approximately one year ago a consumer named Kassie86 rated the Slow Cooker one star, indicated that he or she does not recommend it, published a post titled "Don't buy" and stated the following[32]:

Purchased 1 year ago as a gift. The non stick had peeled away and every time I use it it smells like an electrical fire is about to happen. I would NEVER leave the house with this cooking. The low temp and high temp seem to be the same temperature. I over cook every now. Tried to do a claim but since I don't have my receipt I am out of luck. Would never buy again.

In response, Crock-Pot stated:

Hello Kassie86, this is from CrockPot

Thanks for contacting us. We'll be more than happy to answer your question, and I'm sorry for the inconvenience.

Please contact us through LiveChat. We're available Monday through Friday, 9 am -5 pm Eastern Time.

Thank you and please stay safe!

CrockPot Care

90.     Approximately one year ago another consumer named Sarahel rated the Slow Cooker two stars, indicated that he or she does not recommend it, published a post titled "Easy to clean, but coating did not last!" and stated the following[33]:

The coating on the insert makes it very easy to clean! Unfortunately, after a few months of use, the coating started to come off in little spots. I did not

---

[32] *See id.*
[33] *See id.*

use metal utensils on the product to help prevent this from happening, but it still occured.

In response, Crock-Pot stated:

> Hello
>
> Thank you for taking your time to post this review.
>
> We are sorry to hear about your experience with our Crock-Pot® One Touch Control 6-Quart Easy-to-Clean Slow Cooker, Stainless Steel. We would like to encourage you to contact us directly so we can assist you further. You can reach us via https://www.crock-pot.com/support/contact-us or through LiveChat. We're available Mon.-Fri. 9 am -5 pm Eastern Time.
>
> Thank you and please stay safe!
>
> Crockpot Consumer Care

91.    Eight months ago, Tene41 rated the Slow Cooker one star, indicated that he or she does not recommend it, published a post titled "Blistering in crock" and stated the following[34]:

> Within 3 months the crock blistered. I always cook on low and don't own metal utensils. Very disappointing, my last one lasted 20 years.

Tene41 also included the following photographs:



In response, Crock-Pot stated:

---

[34] *See* https://www.crock-pot.com/slow-cookers/crock-pot-7-quart-easy-to-clean-cook-carry-slow-cooker-black-stainless-steel/SAP_2125325.html (last visited Oct. 28, 2025).

Hi! Thank you for sharing your experience with the Crock-Pot® 7-Quart Easy-to-Clean Cook & Carry® Slow Cooker. We sincerely apologize for the inconvenience you've encountered. It's concerning to hear that the crock blistered within such a short period, especially given your careful usage.

We take product quality very seriously and would like to address this issue promptly. Please reach out to our customer service team via Contact Us form so we can assist you further and ensure you receive a satisfactory resolution. Your feedback is invaluable to us, and we appreciate your patience and understanding.

Thank you for being a loyal customer. We hope to restore your confidence in our products.

92.    Five months ago, Arizona Buyer rated the Slow Cooker one star, indicated that he or she does not recommend it, published a post titled "Waste of money. A toxic danger" and stated the following[35]:

Mine turned unusable just around the one year mark because the coating is peeling and chipping off, making it a danger and toxic to use. Very disappointed. It looks like it may have even been pulled from the market since I noticed there are no sellers. It's no longer available from Target either. What a waste of almost $100. I'm very upset.

Arizona Buyer also included the following photograph:



In response, Crock-Pot stated:

---

[35] *See id.*

Hello, thank you for reaching out to us. We appreciate the time you took to provide feedback on our product. We are sorry to hear that it did not meet your expectations. Your feedback will be forwarded to the relevant department.

If you need our help, please reach out to us through the Contact Us form on our website https://www.crock-pot.com/support/contact-us or through LiveChat. We're available Monday to Friday, from 9 am to 8 pm Eastern Time. We look forward to assisting you!

Thank you!

CrockPot Consumer Care

93.    Nine months ago, SMcC rated the Slow Cooker one star, published a post titled

"Teflon peels" and stated the following[36]:

The Teflon lining peeled quickly. I'd like a new liner that's stoneware, no coating. I had my old one for 10+ years. This one barely lasted 1. I tried to upload a picture, more than half of the teflon is peeling. And I can't seem to find a replacement liner anywhere. None of the links for replacement parts list this model.

SMcC also included the following photograph:



In response, Crock-Pot stated:

Hi,

---

[36] *See id.*

Thank you for reaching out to us and sharing your feedback about our product. We are sorry to hear that it is not working as well as expected and that the coating is peeling. This is not the quality we aim to provide and we will share your feedback with our product team.

For further assistance regarding liners and replacement parts, please reach out to us directly via the 'Contact Us' form on our official website or through LiveChat. We're available Mon.-Fri. 9am -5pm Eastern Time.

Thank you!

Crockpot Consumer Care.

94. The above complaints are merely representative of the complaints posted on Crock-Pot's website related to the coating on the Slow Cookers. Upon information and belief, Crock-Pot was aware of additional consumer complaints and warranty claims made to itself and through its authorized retailers.

95. Crock-Pot has a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class Members because it is aware, or should be aware, that this information would be material to consumers at the time of purchase and thereafter. Crock-Pot repeatedly had and continues to have the opportunity to disclose the truth of the Slow Cookers to Plaintiff, Class Members, and the consuming public but chooses not to do so.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

96. Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their Slow Cookers were defective within the applicable statutes of limitation. Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Slow Cookers contain the Defect.

97.     Further, Plaintiff and Class Members had no knowledge of the Defect, and the excess mica preventing proper adhesion of the Teflon coating is not discoverable by consumers until it manifests in flaking of the coating.

98.     Seeking any information from Crock-Pot related to the Defect in the Slow Cookers would be futile, as Crock-Pot has demonstrated on its website that it will not provide the truth about the coating when asked and ultimately seeks to dismiss inquiries and complaints alike as relates to the Defect.[37]

**B.      Fraudulent Concealment Tolling**

99.     Throughout the time period relevant to this action, Crock-Pot concealed from, misled, and failed to disclose to Plaintiff and Class Members vital material information about the Defect described herein. The information pertaining to the Defect is essential to pursuit of Plaintiff and Class Members' claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

100.    Throughout the Class Period, Crock-Pot has been aware that the Slow Cookers contained the Defect and has been in exclusive control of that information.

101.    Despite its knowledge of the Defect, Crock-Pot failed to disclose and concealed, and continues to conceal, the Defect from Plaintiff, Class Members, and the consuming public even though, at any point in time, it could have disclosed and can still disclose the Defect through a product recall, individual correspondence, media release, or by other means.

102.    Plaintiff and Class Members justifiably relied on Crock-Pot to disclose the Defect in the Slow Cookers that they purchased because the Defect was hidden and not discoverable

---

[37] *See* paragraphs 36–37 and 68–73 above.

through reasonable efforts by Plaintiff and Class Members and was contrary to Crock-Pot's representations about the Slow Cookers.

103.    Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and Class Members have sustained as a result of the Defect, by virtue of the fraudulent concealment doctrine.

C.    **Estoppel**

104.    Crock-Pot was under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the defective Slow Cookers.

105.    Crock-Pot knowingly concealed the true nature, quality, and character of the defective Slow Cookers from consumers.

106.    Based on the foregoing, Crock-Pot is estopped from relying on any statutes of limitations in defense of this action.

### FED. R. CIV. P. 9(b) ALLEGATIONS

107.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Crock-Pot is in the best position to know its representations, omissions, and the truth about the Slow Cookers during the relevant time period, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

108.    **WHO**: Crock-Pot made material misrepresentations and/or omissions of fact in its website representations, Warranty, Product Manual, labeling, product packaging and marketing, through employees receiving in response to Warranty claims and consumer complaints online, and through authorized retailers of the Slow Cookers.

109.     **WHAT**: Crock-Pot's conduct was, and continues to be, fraudulent because it omitted and concealed that the Slow Cookers were defective, were not "Easy-to-Clean," would not properly and reliably prepare food, could present a safety hazard when being used as intended, would prematurely fail and not be fit for use, and could not be repaired and would only be replaced with more defective Slow Cookers. Crock-Pot's employees and representatives made affirmative misrepresentations to Plaintiff and Class Members at the time of purchase regarding the same qualities, when consumers contacted Crock-Pot to make Warranty claims, and in responding to online consumer complaints.  Further, Crock-Pot's conduct has the effect of deceiving Plaintiff and Class Members into believing that the Slow Cookers are not defective, are easy to clean, had an effective Warranty, and that the Slow Cookers would not fail prematurely or otherwise would be fit for use for the expected service life of the Slow Cookers. Crock-Pot knew or should have known that its representations and omissions are material to reasonable consumers, including Plaintiff and Class Members, and would impact consumer choices regarding whether to purchase and the terms of the Warranty, and yet it omits any warning that the nonstick coating does not properly adhere to the Slow Cookers.

110.     **WHEN**: Crock-Pot made the material misrepresentations and/or omissions detailed herein at the time: (1) Plaintiff and Class Members performed research on the Slow Cookers to gather information that would aid them in selecting the best Slow Cooker to purchase; (2) Plaintiff and Class Members purchased the Slow Cookers; (3) Plaintiff and Class Members made warranty claims; (4) Crock-Pot responded to consumer complaints online; and (5) relevant hereto and continuously throughout the applicable Class Periods.

111.  **WHERE**: Crock-Pot's material misrepresentations and/or omissions were made on its website, through marketing materials, in its Warranty, in Product Manuals, on the labeling of the packaging, through employees, and through authorized retailers.

112.  **HOW**: Crock-Pot made written misrepresentations and/or failed to disclose material facts regarding the true qualities and risks associated with ordinary and expected use of the Slow Cookers.

113.  **WHY**: Crock-Pot engaged in the material misrepresentations and/or omissions detailed herein (e.g., knowing and concealing knowledge of the Defect) for the express purpose of inducing Plaintiff, Class Members, and other reasonable consumers to purchase the Slow Cookers and deterring the consuming public from understanding that the nonstick coating was not properly adhering to the Slow Cookers to avoid liability for the resulting damage, including the loss of use of the Slow Cookers. Crock-Pot profited by selling the Slow Cookers to many thousands of consumers.

114.  **INJURY**: Plaintiff and Class Members purchased the Slow Cookers when they otherwise would not have absent Crock-Pot's misrepresentations and/or omissions and, alternatively, paid more for the Slow Cookers than they would have absent Crock-Pot's misrepresentations and/or omissions.

## CLASS ACTION ALLEGATIONS

115.  Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure. This action satisfies numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

116.  The Nationwide Class is defined as:

**All persons in the United States and its territories who either (a) purchased a new Crock-Pot-manufactured Slow Cooker manufactured at the earliest time permitted by the statute of limitations, or (b) received as a gift, from a donor meeting those requirements, a new Slow Cooker not used by the donor or by anyone else after the donor purchased the Slow Cooker and before the donor gave the Slow Cooker to the Class Member.**

117.    The Massachusetts Class is defined as:

**All persons in the state of Massachusetts who either (a) purchased a new Crock-Pot-manufactured Slow Cooker manufactured at the earliest time permitted by the statute of limitations, or (b) received as a gift, from a donor meeting those requirements, a new Slow Cooker not used by the donor or by anyone else after the donor purchased the Slow Cooker and before the donor gave the Slow Cooker to the Class Member.**

118.    The Multi-State Consumer Protection Class is defined as:

**All persons in the state of Massachusetts or any state with similar laws[38] who either (a) purchased a new Crock-Pot-manufactured Slow Cooker manufactured at the earliest time permitted by the statute of limitations, or (b) received as a gift, from a donor meeting those requirements, a new Slow Cooker not used by the donor or by anyone**

---

[38] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59 1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

**else after the donor purchased the Slow Cooker and before the donor gave the Slow Cooker to the Class Member.**

119.    Excluded from the Classes are Defendants and its subsidiaries and affiliates, Defendants' executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

120.    Plaintiff reserves the right to amend or modify the Class definitions as necessary and/or after the opportunity to conduct discovery.

121.    <u>Numerosity</u>: Fed. R. Civ. P. 23(a)(1).  The Classes are so numerous that the joinder of all Class Members is unfeasible and not practicable.   While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that thousands of consumers have purchased the Slow Cookers in Massachusetts and nationwide.

122.    <u>Commonality</u>: Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

a.    whether the Slow Cookers are defective;

b.    whether the Slow Cookers suffer from inadequate material selection, inadequate material mixture, design, and/or manufacture;

c.    whether the fact that the Slow cookers suffer from the Defect would be considered material to a reasonable consumer;

d.    whether Crock-Pot knew or should have known about the Defect before, during, or after distribution of the Slow Cookers to Plaintiff, Class Members, and/or retailers;

e.    whether the Defect is a safety hazard;

f.    whether Crock-Pot concealed from and/or failed to disclose to Plaintiff and Class Members the defective nature of the Slow Cookers;

g.    whether Crock-Pot breached its Warranty with respect to the Slow Cookers;

h.     whether Crock-Pot's Warranty is unconscionable and/or fails of its essential purpose;

i.     whether Crock-Pot had a duty to disclose the defective nature of the Slow Cookers to Plaintiff and Class Members;

j.     whether Crock-Pot made false or misleading statements to consumers to gain additional profits and deter any warranty or legal action;

k.     whether Crock-Pot's conduct was unfair and/or deceptive;

l.     whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

m.     in other ways to be supplemented as a result of discovery.

123.    <u>Typicality</u>: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased the Slow Cooker based upon the representations and omissions made by Defendants. Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that had he known the truth about the Slow Cookers, he would not have purchased his Slow Cooker or would have paid less for it. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members because Defendants' behavior has been systematic and deliberate and results in the same injury to all Class Members.

124.    <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

125.    <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Crock-Pot's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating

their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Crock-Pot's misconduct. Absent a class action, Class Members will continue to incur damages, and Crock-Pot's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**MASS GEN. LAWS CH. 106, § 2-313, *et. seq.***
**(Plaintiff Individually and on Behalf of the Nationwide Class or, in the Alternative, the Massachusetts Class)**

126.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

127.    In connection with its sale of the Slow Cookers, Crock-Pot expressly warranted that they were free from defects in materials at the time of purchase, suitable for reliable and proper food preparation, and easy to clean.

128.    The defectively designed Slow Cookers are subject to and otherwise covered by Crock-Pot's Warranty, which applies to each Slow Cooker.

129.    At all times referenced herein, Crock-Pot was the "seller" of the Slow Cookers.

130.    At all times referenced herein, the Slow Cookers were "goods."

131.    Crock-Pot's representations, in its Warranty and its "Easy-to-Clean" Representations in its marketing materials, among other representations, each constitute an affirmation or promise made by the seller to the buyer which relates to the goods, and which

becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the affirmation or promise.

132.    Each of the Slow Cookers likewise has a substantially identical Warranty.

133.    Crock-Pot was obligated under the terms of the express warranty to offer Slow Cookers which were "free from defects in material or workmanship" or otherwise repair and/or replace the defective Slow Cookers.

134.    Plaintiff and Class Members are in privity Plaintiff and the Class Members have privity of contract with Crock-Pot because they have had sufficient direct dealings with Crock-Pot, including purchasing the Slow Cookers and by relying on Crock-Pot's specifications, representations and warranties.

135.    Plaintiff and Class Members are the intended beneficiaries of the Slow Cookers and Crock-Pot's Warranty based on the express terms as well as the manifest intent of the Warranty, which is for the benefit of the end-users of the Slow Cookers.

136.    In its Warranty, Crock-Pot warrants that the Slow Cookers would be free of defects in material and workmanship for the duration of the Warranty.

137.    Crock-Pot further warrants that the Slow Cookers are easy to clean based on the name of the Slow Cookers as well as in its marketing material, including on the packaging of the Slow Cookers, its online product descriptions, other product literature and marketing materials, through employees, and through authorized retailers.

138.    Crock-Pot's warranty representations are made online, on its packaging, through its various manuals, its Warranty. through employees, and through authorized retailers.

139.    When Plaintiff and Class Members make Warranty claims or otherwise seek information to determine whether there is a valid Warranty claim due to the Defect, Crock-Pot misleads and deceives consumers by omitting any information in its response related to the Defect.

140.    Crock-Pot breached the Warranty because the Slow Cookers were not free from defects in material and workmanship at the time Plaintiff and Class Members purchased the Slow Cookers and that the Slow Cookers would. Otherwise fail prematurely, were not merchantable, and could not be used for the ordinary purpose of reliably and properly preparing food and being easy to clean.

141.    Crock-Pot further breached the Warranty because it improperly and unlawfully denies valid Warranty claims and otherwise misrepresents or omits material information from consumers seeking information about whether there is a basis for a Warranty claim in an effort to avoid claims and/or litigation, and it has failed or refused to adequately repair or replace the Slow Cookers with non-defective units or parts despite its knowledge of alternative feasible designs, manufacturing, and/or materials for the Slow Cookers.

142.    The express written warranties covering the Slow Cookers were a material part of the bargain between Crock-Pot and consumers. At the time it made these express warranties, Crock-Pot knew of the purpose for which Slow Cookers were to be used.

143.    Because of the Defect, Plaintiff and Class Members lose the benefit of the bargain into which they entered at the time of purchase of the Slow Cookers.

144.    The limitations and the exclusions in Crock-Pot's Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, as described above, particularly because Crock-Pot knew that the Slow Cookers suffered from the Defect described herein.

145.    Any attempt by Crock-Pot to limit or disclaim its express warranties in a manner that would exclude coverage of the Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Crock-Pot's concealment of material facts. Thus, any such effort to disclaim, or otherwise limit, its liability for the Defect is null and void.

146.    Moreover, Crock-Pot was put on constructive notice about its breach through its review of consumer complaints dating, as well as through appliance sale and repair entities, and, upon information and belief, through product testing.

147.    Despite having notice and knowledge of the defective nature of the Slow Cookers, Crock-Pot failed to provide any relief to Class Members with Slow Cookers with an expired Warranty period, failed to provide a non-defective replacement Slow Cooker to Plaintiff and Class Members, and otherwise failed to offer any appropriate repair or compensation from the resulting damages.

148.    To the extent that Crock-Pot offered to repair the defective Slow Cookers, repair as a remedy fails in its essential purpose given that there is no repair available for the Defect.

149.    To the extent that Crock-Pot offered to replace the defective Slow Cookers, replacement as a remedy fails in its essential purpose given that Crock-Pot replaces the Slow Cookers with the same model, which is only providing consumers more defective Slow Cookers which will not make them whole.

150.    Had Plaintiff, Class Members, and the consuming public known that the Slow Cookers were defective, were not able to reliably or properly food preparation, or that Crock-Pot would not properly honor its Warranty, they would not have purchased the Slow Cookers or would have paid less for them.

151.    To the extent any express warranties do not by their terms cover the Defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiff and Class Members whole, the Warranty fails of its essential purpose and, accordingly, recovery by Plaintiff and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed by law.

152.    Plaintiff and Class Members have performed all duties required of them under the terms of the express warranties, except as may have been excused or prevented through the conduct of Crock-Pot or by operation of law in light of Crock-Pot's conduct described throughout this Class Action Complaint.

153.    Crock-Pot was provided written notice about its breach on July 21, 2025, and notwithstanding, Crock-Pot has refused to offer an effective remedy.

154.    Moreover, Crock-Pot was put on constructive notice about its breach through its review of consumer complaints, Warranty claims, and, upon information and belief, through product testing and engineering knowledge.

155.    Had Plaintiff, Class Members, and the consuming public known that the Slow Cookers were defective or that Crock-Pot was otherwise in breach of its express warranties, they would not have purchased the Slow Cookers or would have paid less for them.

156.    As a direct and proximate result of Crock-Pot's breach of its express written warranties, Plaintiff and Class Members did not receive the benefit of their bargain, have suffered injury, and are entitled to recover damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

<u>**SECOND CAUSE OF ACTION**</u>
**BREACH OF IMPLIED WARRANTY**
**MASS. GEN LAWS CH. 106, § 2-314, *et. seq.***

**(Plaintiff Individually and on Behalf of the Nationwide Class or, in the Alternative, the Massachusetts Class)**

157.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

158.    Crock-Pot is and was at all relevant times a merchant with respect to the Slow Cookers, and is the manufacturer, distributor, warrantor, and/or seller of the Slow Cookers. Crock-Pot knew or had reason to know of the specific use for which the Slow Cookers, as goods, were purchased.

159.    The Slow Cookers are and were at all relevant times a "good."

160.    Crock-Pot entered into agreements with retailers, suppliers, contractors, and/or Plaintiff and Class Members to provide the Slow Cookers.

161.    Every sale of consumer goods is accompanied by a manufacturer's implied warranty that the goods are merchantable within the meaning of Mass. Gen. Laws ch. 106, § 2-314.

162.    Crock-Pot provided Plaintiff and Class Members with implied warranties that the Slow Cookers: (a) would pass without objection in the trade under contract description; (b) were of fair average quality within the description; (c) were fit for the ordinary purposes for which such goods were used; (d) ran, within the variations permitted by agreement, of even kind, quality and quantity within each unit and among all units involved; (e) were adequately contained, packaged, and labeled as the agreement may require; and (f) conformed to the promises or affirmations of fact made on the container or label if any.

163.    However, the Slow Cookers are not fit for their ordinary purpose of reliably and properly preparing food and being easy to clean such that, inter alia, the Slow Cookers contain a Defect preventing the Slow Cookers from reliably and properly preparing food and being easy to

clean because the coating on the Slow Cookers detaches, bubbles, chips, flakes, and peels off, ultimately resulting in the premature and total failure of the Slow Cookers. Therefore, the Slow Cookers are not fit for their ordinary purpose.

164. Likewise, Crock-Pot knew the identity, purpose, and requirements of the Slow Cookers as operational slow cookers that would properly and reliably prepare food and be easy to clean such that the coating on the Slow Cookers would not flake through foreseeable use prematurely fail or be unfit for use.

165. Plaintiff and Class Members are in privity of contract with Crock-Pot because they have had sufficient direct dealings with Crock-Pot, including purchasing the Slow Cookers and by relying on Crock-Pot's specifications, representations and warranties.

166. Plaintiff and Class Members are the intended beneficiaries of the Slow Cookers and Crock-Pot's warranties, either express or implied, based on the express terms as well as the manifest intent of the Warranty, which is for the benefit of the end-users of the Slow Cookers.

167. Crock-Pot impliedly warranted that the Slow Cookers were of merchantable quality and fit for such use. These implied warranties included, among other things that the Slow Cookers: (i) would properly and reliably prepare food; (ii) would be easy to clean; (iii) the would be fit for use for their expected service life or otherwise not prematurely fail; (iv) would be fit for their intended use while the Slow Cookers were being operated; and (v) would not contain the Defect.

168. Contrary to the applicable implied warranties, the Slow Cookers, at the time of sale and thereafter, were below the requisite level of quality to be considered merchantable and were otherwise not fit for their ordinary and intended purpose due to the Defect in design, manufacture, material selection or mixture as alleged herein.

169.    Crock-Pot's failure to adequately repair or replace the defective Slow Cookers has caused the warranty to fail of its essential purpose.

170.    To the extent Crock-Pot disclaims any implied warranties and lawful remedies thereunder, such a disclaimer is unconscionable as described above.

171.    Crock-Pot was provided written notice about its breach on July 21, 2025, and notwithstanding, Crock-Pot has refused to offer an effective remedy.

172.    Moreover, Crock-Pot was put on constructive notice about its breach through its review of consumer complaints, Warranty claims, and, upon information and belief, through product testing and engineering knowledge.

173.    Had Plaintiff, Class Members, and the consuming public known that the Slow Cookers were defective or that Crock-Pot was otherwise in breach of its implied warranties, they would not have purchased the Slow Cookers or would have paid less for them.

174.    As a direct and proximate result of Crock-Pot's breach of its implied warranties, Plaintiff and Class Members did not receive the benefit of their bargain, have suffered injury, and are entitled to recover damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### THIRD CLAIM FOR RELIEF
### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. § 2301, ET SEQ.
### (Plaintiffs Individually and on Behalf of the Nationwide Class or, in the Alternative, the Massachusetts Class)

175.    Plaintiffs hereby adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

176.    The MMWA, 15 U.S.C. § 2301, et seq., provides a private right of action to purchasers of consumer products against retailers who, inter alia, fail to comply with the terms of a written warranty, express warranty, and/or implied warranty.

177.    As demonstrated above, Defendants have failed to comply with the terms of its express and implied warranties on the Slow Cookers that it manufactured, advertised, marketed, and/or sold.

178.    The Slow Cookers are "consumer products" as defined in 15 U.S.C. § 2301(1).

179.    Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3), and utilized the Slow Cookers for personal and household use and not for resale or commercial purposes.

180.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

181.    Defendant provided Plaintiff and Class Members with "written warranties" within the meaning of 15 U.S.C. § 2301(6), including the Warranty as well as the "Easy-to-Clean" Representations.

182.    The Slow Cookers would not pass without objection in the cooking trade because they share a common Defect, which causes premature failure and a possible safety hazard due to ingestion of Teflon.

183.    However, the Slow Cookers are not fit for their ordinary purpose of reliably and properly preparing food and being easy to clean such that, *inter alia*, the Slow Cookers contain a Defect preventing the Slow Cookers from reliably and properly preparing food and being easy to clean because the coating on the Slow Cookers detaches, bubbles, chips, flakes, and peels off,

ultimately resulting in the premature and total failure of the Slow Cookers. Therefore, the Slow Cookers are not fit for their ordinary purpose.

184.    Likewise, Crock-Pot knew the identity, purpose, and requirements of the Slow Cookers as operational slow cookers that would properly and reliably prepare food and be easy to clean such that the coating on the Slow Cookers would not flake through foreseeable use prematurely fail or be unfit for use.

185.    The Slow Cookers do not conform to the "Easy-to-Clean" given that the Slow Cookers contain a Defect such that the coating on the Slow Cookers detaches, bubbles, chips, flakes, and peels off, ultimately resulting in the premature and total failure of the Slow Cookers.

186.    Moreover, the Defect renders the Slow Cookers below a minimal level of quality such that the Slow Cookers are not merchantable for each of the following bases: (1) the safety risk from ingestion of Teflon is unreasonable; (2) the coating on the Slow Cookers detaches, bubbles, chips, flakes, and peels off from ordinary and normal use of the Slow Cookers; (3) the Defect causes the Slow Cookers to prematurely fail.

187.    The Slow Cookers share a common Defect, as defined and described herein, is not acknowledged or disclosed to Plaintiff and Class Members, is concealed by Defendants when Plaintiff and Class Members make warranty claims, and is a risk of premature failure.

188.    Defendants' conduct as described herein, including its refusal to replace and/or recall the Slow Cookers or disclose the Defect within a reasonable time, is a failure to comply with its obligations under its implied promises and warranties.

189.    Plaintiff and Class Members fulfilled their obligations under the implied warranties.

190.    There is privity between Defendants, Plaintiff and Class Members by Defendants' direct warranties and/or because Plaintiff and Class Members were intended third-party beneficiaries of Defendants' express and implied warranties.

191.    As a direct and proximate result of Defendants' breach of its express and implied warranties, Defendants have violated the statutory rights of Plaintiff and Class Members pursuant to MMWA, thereby damaging Plaintiff and Class Members in amounts to be proven at trial.

192.    Crock-Pot was provided written notice about its breach on July 21, 2025, and notwithstanding, Crock-Pot has refused to offer an effective remedy.

193.    Moreover, Crock-Pot was put on constructive notice about its breach through its review of consumer complaints, Warranty claims, and, upon information and belief, through product testing and engineering knowledge.

### FOURTH CAUSE OF ACTION
### FRAUD
**(Plaintiff Individually and on Behalf of the Nationwide Class or, in the Alternative, the Massachusetts Class)**

194.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

195.    At all times, Crock-Pot utilized the "Easy-to-Clean" Representations to describe the Slow Cookers. However, Crock-Pot knew that the Slow Cookers were not, in fact, in conformance with the "Easy-to-Clean" Representations.

196.    Crock-Pot instead knew that the Slow Cookers were defective in material selection, material mixture, design and manufacture, were not fit for their ordinary and intended use, and failed to perform in accordance with advertisements, marketing materials and warranties disseminated by Crock-Pot, and with the reasonable expectations of ordinary consumers.

197.    Crock-Pot fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and Class Members that the Slow Cookers are defective, were not easy to clean, would not properly and reliably prepare food, would prematurely fail.

198.    Crock-Pot had exclusive knowledge and/or control of the defective nature of the Slow Cookers at the time of sale and at all other relevant times.

199.    The Defect is latent and not something that Plaintiff or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

200.    Crock-Pot had the capacity to, and did, deceive Plaintiff and Class Members into believing that they were purchasing Crock-Pots free from defects and were easy to clean.

201.    Crock-Pot undertook active and ongoing steps to conceal the Defect. Plaintiff is not aware of anything in Crock-Pot's advertising, publicity, product literature, or marketing materials that disclosed the truth about the Defect despite Crock-Pot's awareness of the problem.

202.    The facts concealed and/or not disclosed by Crock-Pot to Plaintiff and Class Members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Slow Cookers.

203.    Crock-Pot intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class Members to act thereon.

204.    Crock-Pot exercised control over the material facts, including the presence of the Defect, such that they were not readily available to Plaintiff and the Class Members.

205.    Plaintiff and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchases of the Slow Cookers.

206.    Plaintiff and Class Members suffered a loss of money in an amount to be proven at trial, inter alia, as a result of Crock-Pot's fraudulent concealment and nondisclosure because: (a)

they would not have purchased the Slow Cookers on the same terms if the true facts concerning the defective Slow Cookers had been known; (b) they would not have paid a price premium for the Slow Cookers if they knew of the Defect and that the Slow Cookers were likely to fail prematurely and be unfit; and (c) the Slow Cookers did not perform as promised or as expected.

207.    Had Plaintiff, Class Members, and the consuming public known that the Slow Cookers were defective or would cause damage, they would not have purchased the Slow Cookers or would have paid less for them.

208.    By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer damage and injury.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF MASSCHUSETTS CONSUMER PROTECTION LAW**
**MASS. GEN. LAWS CH. 93A, *ET SEQ.***
**(Plaintiff Individually and on Behalf of the Massachusetts Class)**

209.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

210.    Mass. Gen. Laws ch. 93A (hereinafter "Chapter 93A"), § 9 provides that "[a]ny person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action in the superior court . . . for damages and such equitable relief." Section 2 declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

211.    During the relevant period, Crock-Pot was engaged in trade or commerce within the Commonwealth of Massachusetts.

212.    As described herein, Crock-Pot engaged in unfair and deceptive business acts and/or practices in violation of Chapter 93A, §§ 2 and 9 as described above and specifically for: (1) designing, manufacturing, marketing, and selling the Slow Cookers with the Defect, knowing or having constructive knowledge of the Defect at the time of sale to Plaintiff and Class Members, and not disclosing the Defect; (2) representing through various channels that the Slow Cookers conformed to the "Easy-to-Clean" Representations but did not in actuality due to the Defect; (3) representing that the Slow Cookers were "PFOA-Free" but included toxic chemicals in the nonstick coating which otherwise rendered the Slow Cookers unfit for use by consumers; and (4) designing, manufacturing, marketing, and selling the Slow Cookers with knowledge or constructive knowledge that the Slow Cookers would prematurely failure or otherwise not meet expectations regarding the expected service life of the Slow Cookers.

213.    Crock-Pot engaged in unfair and deceptive business acts and/or practices in violation of Chapter 93A, §§ 2 and 9 by breaching the implied warranty of merchantability under to Mass. Gen. Laws ch. 106, § 2-314. *See, e.g.,* 940 Code Mass. Regs. § 3.16(2); 940 Code Mass. Regs. § 3.08(2).

214.    In formulating unconscionable express warranties, Crock-Pot engaged in unfair and deceptive business acts and/or practices in violation of in violation of Chapter 93A, §§ 2 and 9. *See id.*

215.    Crock-Pot's violation of the Massachusetts Attorney General regulations enumerated above also violates Chapter 93A, § 2(a) because regulations promulgated by the Massachusetts Attorney General under Chapter 93A, § 2(c) provide that any act or practice violates Chapter 93A, § 2 if "It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any

political subdivision thereof intended to provide the consumers of this Commonwealth protection." *See* 940 Code Mass. Regs. § 3.16(3).

216.    The facts concealed and/or not disclosed by Crock-Pot to Plaintiff and Class Members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Slow Cookers.

217.    Crock-Pot's violations of Chapter 93A were committed willfully, knowingly and in bad faith.

218.    Crock-Pot made their untrue and/or misleading statements, representations, and omissions willfully, wantonly, and with reckless disregard for the truth.

219.    Plaintiff and Class Members have sustained actual damages as a result of Crock-Pot's violations of Chapter 93A, and Crock-Pot has been unjustly enriched.

220.    Plaintiff made a written demand for relief, in writing on behalf of himself and Class Members on July 21, 2025, prior to filing this Class Action Complaint, to which Crock-Pot responded acknowledging receipt and did not make a settlement offer.

221.    As of the date of this Class Action Complaint, Crock-Pot has not made a reasonable offer of relief to Plaintiff and Class Members. In response to Plaintiff's demand letter, Crock-Pot has not offered sufficient relief to Plaintiff or Class Members. Crock-Pot's refusal to grant the relief requested by Plaintiff, on behalf of himself and Class Members, was made in bad faith with knowledge or reason to know that its acts violated Chapter 93A, § 2(a).

222.    As a result of Crock-Pot's violations of Chapter 93A, Crock-Pot is liable to Plaintiff and Class Members for treble damages that Plaintiff and Class Members incurred, or at the very least refunds or the statutory minimum award of $25, together with all related court costs and attorneys' fees, declaratory and injunctive relief, and any other relief permitted under the law.

## SIXTH CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (Plaintiff Individually and on Behalf of the Multi-State Consumer Class)

223.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

224.    Plaintiff and Class Members have been injured as a result of Crock-Pot's violations of the state consumer protection statutes listed above in paragraph 101, footnote 34, which also provide a basis for redress to Plaintiff and Class Members based on Crock-Pot's fraudulent, deceptive, unfair and unconscionable acts, practices, and conduct.

225.    Crock-Pot's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

226.    Crock-Pot violated the Multi-State Consumer Class states' unfair and deceptive acts and practices laws for all the bases by which Crock-Pot violated Chapter 93A, including but not limited to: (1) designing, manufacturing, marketing, and selling the Slow Cookers with the Defect, knowing or having constructive knowledge of the Defect at the time of sale to Plaintiff and Class Members, and not disclosing the Defect; (2) representing through various channels that the Slow Cookers conformed to the "Easy-to-Clean" Representations but did not in actuality due to the Defect; (3) representing that the Slow Cookers were "PFOA-Free" but included toxic chemicals in the nonstick coating which otherwise rendered the Slow Cookers unfit for use by consumers; (4) designing, manufacturing, marketing, and selling the Slow Cookers with knowledge or constructive knowledge that the Slow Cookers would prematurely failure or otherwise not meet expectations regarding the expected service life of the Slow Cookers; and (5) in breaching its express and implied warranties.

227.    The facts concealed and/or not disclosed by Crock-Pot to Plaintiff and Class Members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Slow Cookers.

228.    Crock-Pot made their untrue and/or misleading statements, representations, and omissions willfully, wantonly, and with reckless disregard for the truth.

229.    As a result of Crock-Pot's violations, Crock-Pot has been unjustly enriched.

230.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

231.    As a result, Plaintiff and Class Members have sustained actual damages, and Crcokpot has been unjustly enriched.

232.    Plaintiff made a written demand for relief, in writing on behalf of himself and Class Members on July 21, 2025, prior to filing this Class Action Complaint, to which Crock-Pot responded acknowledging receipt and did not make a settlement offer.

233.    As of the date of this Class Action Complaint, Crock-Pot has not made a reasonable offer of relief to Plaintiff and Class Members. In response to Plaintiff's demand letter, Crock-Pot has not offered sufficient relief to Plaintiff or Class Members. Crock-Pot's refusal to grant the relief requested by Plaintiff, on behalf of himself and Class Members, was made in bad faith with knowledge or reason to know that its acts violated not just Chapter 93A, § 2(a), but also the consumer protection laws of the states in question regarding the Mult-State Consumer Protection Class.

234.     As a result of Crock-Pot's unfair and deceptive conduct, Crock-Pot is liable to Plaintiff and Class Members for all relief available under the law, including monetary damages, any damage multipliers or other statutory damages, together with all related court costs and attorneys' fees, declaratory and injunctive relief, and any other relief permitted under the law.

**SEVENTH CAUSE OF ACTION**
**(IN THE ALTERNATIVE)**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Plaintiff Individually and on Behalf of the Nationwide Class or, in the Alternative, the Massachusetts Class)**

235.     Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

236.     To the extent Crock-Pot's commitment is deemed not to be a warranty under the Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

237.     Plaintiff and Class Members purchased the Slow Cookers from Crock-Pot or through retailers such as Walmart, Target, Amazon, and other home good stores and authorized retailers.

238.     Crock-Pot expressly warranted that the Slow Cookers were fit for their ordinary and intended purpose of being able to properly and reliably prepare food, be easy to clean, be free from defects, and to provide use for the expected service life of the Slow Cookers or not otherwise prematurely fail.

239.     These warranties and other representations made by Crock-Pot formed a contract between Plaintiff, Class Members, and Crock-Pot.

240.     Crock-Pot made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Crock-

Pot on its website, through marketing materials, in its Warranty, in Product Manuals, on the labeling of the packaging and product, through employees, and through authorized retailers.

241.    Crock-Pot breached the warranties and/or contract obligations by placing the defective Slow Cookers into the stream of commerce and selling them to consumers, when it knew the Slow Cookers contained the Defect, would fail prematurely, and did not properly or reliably prepare food or be easy to clean. These deficiencies substantially and/or completely impair the use and value of the Slow Cookers and result in total failure.

242.    The deficiencies described existed when the Slow Cookers left Crock-Pot's possession or control and were sold to Plaintiff and Class Members. The deficiencies and impairment of the use and value of the Slow Cookers were not discoverable by Plaintiff or Class Members at the time of the purchase of the Slow Cookers.

243.    Plaintiff and Class Members relied on Crock-Pot's representations and warranties in purchasing the Slow Cookers.

244.    Had Plaintiff, Class Members, and the consuming public known that the Slow Cookers were defective or that Crock-Pot was otherwise in breach of its warranties, they would not have purchased the Slow Cookers or would have paid less for them.

245.    As a direct and proximate result of Crock-Pot's breach of its warranties, Plaintiff and Class Members did not receive the benefit of their bargain, have suffered injury, and are entitled to recover damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### EIGHTH CAUSE OF ACTION
**(IN THE ALTERNATIVE)**
**UNJUST ENRICHMENT**
**(Plaintiff Individually and on Behalf of the Nationwide Class or, in the Alternative, the Massachusetts Class)**

246.    Plaintiff hereby adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

247.    This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Plaintiff, Class Members, and Crock-Pot do not govern the subject matter of the disputes with Crock-Pot, or that Plaintiff does not have standing to assert any contractual claims against Crock-Pot.

248.    Plaintiff and Class Members conferred a monetary benefit on Crock-Pot, and Crock-Pot had knowledge of this benefit. The average price paid by Plaintiff and Class Members for the Slow Cookers was approximately $75.

249.    Given that Crock-Pot did not disclose the Defect to consumers, Plaintiff and Class Members were unaware that there was a uniform defect in every Slow Cooker and were more likely to replace defective Slow Cookers with more defective Slow Cookers.

250.    Plaintiff and Class Members purchased the Slow Cookers on the belief that the Slow Cookers would properly and reliably prepare food, be easy to clean, and be free from defects. However, the Slow Cookers contain the Defect and were unable to meet Plaintiff and Class Members' expectations and the Slow Cookers would prematurely fail or be unusable.

251.    Crock-Pot omitted and concealed that the Slow Cookers were defective, were not easy to clean, would prematurely fail, and would damage Plaintiff and Class Members.

252.    Plaintiff and Class Members had no reason to know that the Slow Cookers were defective.

253.    Crock-Pot omitted and concealed that the Slow Cookers were defective so that it could make an increased profit, deter warranty and liability claims, and encourage replacement purchases of the same defective Slow Cookers.

254.    By its wrongful acts and omissions described herein, including selling the defective Slow Cookers, Crock-Pot was unjustly enriched at the expense of Plaintiff and Class Members.

255.    Plaintiff and Class Members' detriment and Crock-Pot's enrichment were related to and flowed from the wrongful conduct alleged in this Class Action Complaint.

256.    It would be inequitable for Crock-Pot to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Slow Cookers.

257.    Plaintiff and Class Members seek restitution from Crock-Pot and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Crock-Pot from its wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

A.  Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  Name Plaintiff as Class Representative of the Classes;

C.  Name Plaintiff's counsel as Class Counsel for the Classes;

D.  Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

E.  Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

F.  Award Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.  Award Plaintiff and the Classes pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.  Award such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: January 5, 2026

Respectfully submitted,

*/s/ Alex R. Straus*
Alex R. Straus, Bar No. 677434
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLP**
80280 South Beverly Drive, Penthouse
Los Angeles, California 90212
Telephone: (914) 471-1894
astraus@milberg.com

Harper T. Segui*
**LEE SEGUI PLLC**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@leesegui.com

Erin Ruben*
Thomas A. Pacheco*
**LEE SEGUI PLLC**
900 W. Morgan Street
Raleigh, NC 27603
eruben@leesegui.com
tpacheco@leesegui.com

***Attorneys for Plaintiff and the Classes***

*Applications for Admission *Pro Hac Vice*
Forthcoming